John Paul McINTOSH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–08–00582–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 1, 2009.

Carmen Mae Roe, Houston, TX, Ralph L. Gonzalez, Richmond, TX, for Appellant.

Chad E. Bridges, Assistant Criminal District Attorney, Fort Bend County, John F. Healey Jr., Fort Bend County District Attorneys Office, Richmond, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

Under Texas Rule of Appellate Procedure 50, we withdraw our July 23, 2009 opinion, substitute this opinion in its place, and vacate our July 23, 2009 judgment.[1]

A jury found appellant, John Paul McIntosh, guilty of the offense of burglary of a habitation,[2] and the trial court, after finding true the allegation in one enhancement paragraph that appellant had one prior felony conviction, assessed his punishment at confinement for ten years. In three points of error, appellant contends that the evidence is legally and factually insufficient to support his conviction and that the trial court, in its charge, erroneously instructed the jury on the law of burglary of a habitation, the lesser-included offense of criminal trespass, and the facts regarding mistake of fact.

We affirm.

## Factual Background

Fort Bend County Sheriff's Deputy V. Garcia testified that on February 26, 2007, he was dispatched to the home of the complainant, Maria Alcantar. Upon his arrival, the complainant, in a recorded statement, told Garcia that she lived in the home with her parents, siblings, and daughter. She also told Garcia that appellant, the father of her three-year-old

---

1. After a party files a petition for discretionary review, an intermediate appellate court may, within 60 days, reconsider and correct or modify the its opinion. Tex.R.App P. 50. If the court modifies its opinion, "[t]he original petition for discretionary review is not dismissed by operation of law, unless the filing party files a new petition in the court of appeals." Tex.R.App. P. 50(a). Alternatively, "the petitioning party shall submit to the court of appeals copies of the corrected or modified opinion or judgment as an amendment to the original petition." Id. Although Rule 50 expressly provides that a petitioner may stand on its original petition after the issuance of a corrected or modified opinion, and although Rule 50 does not contain a specific time restriction for a party to submit a copy of the corrected or modified opinion as an amendment to the original petition, the Texas Court of Criminal Appeals has recently determined that a petitioner that wishes to stand on its original petition must submit a copy of the corrected or modified opinion to the court of appeals as an amended petition within 30 days of issuance of the corrected or modified opinion. See Harris v. State, 287 S.W.3d 785 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (Appellant timely filed an original petition for discretionary review, but, after this Court reconsidered and issued a modified opinion, he did not submit a copy of the modified opinion as an amendment to his petition within 30 days after its issuance; the Court of Criminal Appeals deemed his petition untimely filed and categorized the case as having no petition filed.).

2. See Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).

daughter, had broken into the house through the kitchen window and kicked in the door of the bathroom, where she had been hiding with her daughter and her younger sister, Daisy Alcantar ("Alcantar").

Alcantar testified that on February 26, 2007, she stayed home from school because she "had a pink eye." That morning, she heard appellant knocking on the front door, and then he went around to the back door. The complainant did not want to open the door for him, so Alcantar and the complainant and her daughter hid in the bathroom, locked the bathroom door, and called for emergency assistance. From the bathroom, Alcantar heard appellant break the kitchen window. Then, when appellant broke open the bathroom door, Alcantar began "panicking." When he entered the bathroom, appellant said, "I thought there was another dude in here" and looked around the house before leaving. Alcantar explained that appellant is "pretty jealous." She described appellant as "a jealous guy," who would be angry if he found out that the complainant was dating someone else.

The complainant testified that she had been in a dating relationship with appellant for seven years but that there had "been times when [they had not] been dating." Prior to February 26, 2007, they had ended their relationship, and the complainant was "scared" when she heard someone knocking on the front door. The complainant took her daughter and Alcantar to the master bathroom, where they waited for about ten minutes until the knocking stopped. She then heard appellant in the backyard yelling, "Maria, open the door. I know you're in there because I hear [our daughter] yelling and screaming." The complainant "panicked," ran to the front bathroom with her sister and daughter, and locked the bathroom door.

When she heard appellant break the kitchen window, she was frightened. She explained that appellant then walked to the bathroom door and "kicked the door in." When the State played a tape recording of her statement to Officer Garcia that appellant would have "killed her" if he had found her with "another guy," the complainant stated that she had "exaggerated."

Harris County Sheriff's Deputy R. Delano testified that on June 14, 2006, he was dispatched to interview the complainant about an incident that had occurred the previous evening. The complainant told Delano that appellant had arrived at her house, told her to get into his car, and drove her to a barber shop, where he "made her go inside" and "closed and locked the door behind them." After he had locked the door, appellant started drinking alcoholic beverages until he became intoxicated and fell asleep. The complainant tried to wake him up and "get him to take her home," but when he woke up around midnight "he became angry with her, and he struck her one time on the left side of her face." Finally, sometime around 7:30 a.m., appellant allowed her to leave. When Delano interviewed the complainant, she "had a swollen nose, the left side of her face was swollen," and he saw "blood on her clothes."

Appellant testified that he went to the complainant's house on February 26, 2007 because he had heard that there were "some people after" the complainant's brother. After knocking on the door, ringing the doorbell, and calling the complainant on his cellular telephone without getting any response, appellant went to the back of the house because he thought that the back door might be unlocked. When he "got back there, [appellant] heard his daughter crying and screaming," so "[w]ithout hesitation, [he] broke the win-

dow" and entered the house. Appellant "thought something was going on, thought something was wrong." Finding the bathroom door locked, appellant "[s]houldered the door in." Regarding Delano's testimony that the complainant had stated that appellant had previously taken her to a barber shop and struck her face, appellant stated that he could not dispute the statement because he "was drunk" and could not remember what had happened. On cross-examination, appellant agreed that he would have "been really angry" if the complainant had been in the house with another man and that he is "a jealous guy." He explained that he left the house because he saw Alcantar "on the phone, and [he] had a warrant for [his] arrest."

### Sufficiency of the Evidence

In his first point of error, appellant argues that the evidence is legally insufficient to support his conviction because he "lacked the requisite mental state to intend to commit assault against the complainant." In his second point of error, appellant argues that the evidence is factually insufficient to support his conviction because the "evidence of intent to commit assault is so weak as to undermine ... confidence in the jury's determination."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). In doing so, we give deference to the responsibility of the fact-finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Id.* However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, i.e., that the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). We note that a jury is in the best position to evaluate the credibility of witnesses, and we afford due deference to the jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006). Although we should always be mindful that a jury is in the best position to decide the facts and that we should not order a new trial simply because we disagree with the verdict, it is "the very nature of a factual-sufficiency review that ... authorizes an appellate court, albeit to a very limited degree, to act in the capacity of a so-called 'thirteenth juror.'" *Watson*, 204 S.W.3d at 416–17. Thus, when an appellate court is "able to say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict[,] ... it is justified in exercising its appellate fact jurisdiction to order a new trial." *Id.* at 417.

An individual commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit an assault. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). A person commits the offense of assault if he inten-

tionally, knowingly, or recklessly causes bodily injury to another or if he intentionally or knowingly threatens another with imminent bodily injury. *Id.* § 22.01(a)(1), (2). Juries may infer intent from a defendant's conduct and the surrounding facts and circumstances. *LaPoint v. State,* 750 S.W.2d 180, 182 (Tex.Crim.App.1986); *McGee v. State,* 923 S.W.2d 605, 608 (Tex. App.-Houston [1st Dist.] 1995, no pet.).

■ Regarding the legal sufficiency of the evidence, appellant admitted that he broke a window to gain entry into the complainant's house when no one would open the door and, finding the bathroom door locked, broke the door to get into the bathroom. Appellant admitted that he would have been angry if another man had been in the house with the complainant, and Alcantar testified that appellant said, "I thought there was another dude in here," after he broke into the bathroom. Deputy Delano testified that appellant had assaulted the complainant in the past. Viewed in the light most favorable to the verdict, the evidence supports the jury's finding that appellant entered the house with the intent to assault the complainant. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

■ In support of his argument that the evidence is factually insufficient to support his conviction, appellant relies on the fact that the complainant "never testified to being assaulted or being in fear of imminent assault from [a]ppellant." However, there is evidence that the complainant feared an imminent assault from appellant. Deputy Garcia recorded the complainant's statement in which she said that if appellant thought there was another man in the house with her, she believed "he would have killed [her]." Additionally, after recognizing appellant's voice, the complainant testified that she was frightened and locked herself in the bathroom. Nevertheless, even if the complainant did not fear an imminent assault, the jury could have found either that appellant intended to cause bodily injury to the complainant or that he intended to threaten the complainant with imminent bodily injury by inferring appellant's intent from the surrounding facts and circumstances that are discussed in the previous paragraph. *See LaPoint,* 750 S.W.2d at 182; *McGee,* 923 S.W.2d at 608. Appellant did not dispute any of the facts discussed above except for Alcantar's testimony that he had said, "I thought there was another dude in here," and he testified that he did not intend to assault the complainant. Nevertheless, the jury was free to disbelieve appellant's testimony. *See Marshall,* 210 S.W.3d at 625 (requiring appellate courts to defer to jury determinations of credibility).

We conclude that the evidence is not so obviously weak as to make the jury's verdict clearly wrong and manifestly unjust, nor is the proof of guilt against the great weight and preponderance of the evidence. Accordingly, we hold that the evidence is factually sufficient to support appellant's conviction.

We overrule appellant's first and second points of error.

### Jury Charge

In his third point of error, appellant argues that he suffered egregious harm in the guilt phase of the trial because the trial court, in the application portion of its charge, did not explain to the jury that it was required to determine whether appellant intentionally or knowingly entered the habitation with intent to commit assault, instruct the jury on the elements of the lesser-included offense of criminal trespass, and "properly set out those facts adduced at trial in its application paragraph applying the law of mistake of fact."

The trial court prepared the charge and submitted it to counsel for both parties. The application portion of the charge reads as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about February 26, 2007, in Fort Bend County, Texas, the defendant, JOHN PAUL MCINTOSH, did enter a building then and there owned, occupied or used as a habitation by Maria Alcantar, without the effective consent of the Maria Alcantar, with the intent to assault, then you will find the defendant guilty as charged.

Unless you so find beyond a reasonable doubt, or if you have reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty" and consider the lesser included offense of criminal trespass.

Now, if you find from the evidence beyond a reasonable doubt that on or about February 26, 2007 in Fort Bend County, Texas, the defendant, John Paul Mcintosh [sic] did intentionally or knowingly did [sic] enter a building then and there owned, occupied or used as a habitation by Maria Alcantar, without the effective consent of the [sic] Maria Alcantar, then you will find the defendant guilty of the lesser included offense of criminal trespass. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if her [sic] mistaken belief negated the kind of culpability required for commission of the offense charged.

By the term "reasonable belief" is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

Therefore, if you believe from the evidence that on the occasion in question the defendant, JOHN PAUL MCINTOSH through mistake, formed a reasonable belief and did believe that Maria Alcantar was held hostage by another person and JOHN PAUL MCINTOSH believed that his entry was solely for that purpose, or if you have a reasonable doubt thereof, then you will find the defendant not guilty of burglary of a habitation with the intent to commit assault.

Although the defendant's alleged mistake of fact may constitute a defense to the offense charged—burglary of a habitation with intent to commit assault—he may nevertheless be convicted of a lesser included offense of which he committed if the fact was as he believed.

At the charge conference, appellant's trial counsel stated, "[W]e have no requested further charges, nor do we have any objections to the charge as it stands right now. The State has added what we requested, the lesser included offense of criminal trespass and mistake of fact, and we're satisfied with the charge as it stands."

 The trial court must instruct the jury by "a written charge distinctly setting forth the law applicable to the case." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). When reviewing alleged errors in a trial court's charge, we must first determine whether error actually exists in the charge, and, if error does exist, we must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994). When, as here, a defendant fails to object or states that he has no objection to a charge, an error in the charge does not require reversal unless the record shows

"egregious harm" to the defendant. *Id.* at 731–32; *see also* Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case or depriving the defendant of a valuable right, vitally affecting a defensive theory, or making the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim.App.1991); *Martinez v. State*, 190 S.W.3d 254, 259 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). To determine whether a defendant has sustained harm from a non-objected-to instruction, we consider (1) the entire charge, (2) the state of the evidence, (3) arguments from counsel, and (4) any other relevant information. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim.App.1996).

### Appellant's Intent

 Appellant first complains that "the application paragraph does not incorporate or refer to any culpable mental state for the offense of burglary of [a] habitation with intent to commit assault." He asserts that "the jury was left with nothing but inference because there was no requirement to find [that] [a]ppellant intentionally or knowingly entered the habitation of [the complainant], with the intent to commit assault, in the application paragraph of the charge."

Regarding the intent to assault, the charge expressly states that the jury had to find that appellant entered the complainant's house "with the intent to assault" in order to find him guilty of the offense of burglary of a habitation. Based on this language, the jury was required to find that appellant entered the house with the intent to commit the offense of assault.

It is true that the application paragraph does not include the word "intentionally" or "knowingly" before the word "enter." Rather, it instructed the jury to find appellant guilty of the offense of burglary if he "did enter" the house "with the intent to assault." [3] In order to establish the commission of the offense of burglary of a habitation, the evidence must show "that the entry was either knowingly or intentionally done." *DeVaughn v. State*, 749 S.W.2d 62, 64 n. 3 (Tex.Crim.App.1988). However, this "general culpable mental state is subsumed into the specific intent to commit a felony, theft, or assault." *Id.*; *Martinez v. State*, 269 S.W.3d 777, 781–82 (Tex.App.-Austin 2008, no pet.).

Appellant makes the same complaint made by the defendant in *Sylvester v. State*, 615 S.W.2d 734, 735 (Tex.Crim.App. 1981). There, the defendant complained that the "charge [regarding burglary] was fatally defective and fundamentally erroneous in that it did not include an instruction on the required culpable mental state." *Id.* The jury was instructed that

> they must find from the evidence beyond a reasonable doubt that the accused did enter a building not then open to the public, occupied, controlled, and in the possession of the complainant, owner, without the effective consent of said owner, with the intent then and there to commit theft, "then you will find the defendant guilty as charged." Unless

---

**3.** Additionally, we note that although appellant now complains about this omission in the jury charge, appellant testified that he intentionally entered the house by breaking the kitchen window.

they did so find beyond a reasonable doubt, they were instructed to find the defendant not guilty.

*Id.* n. 2. The court, citing to *Teniente v. State,* 533 S.W.2d 805, 805 (Tex.Crim.App. 1976), held the charge sufficient because it required the jury to find the requisite culpable mental state to sustain the conviction, that mental state being entry "with the intent then and there to commit theft." *Id.* at 736; *see also Smith v. State,* 642 S.W.2d 253 (Tex.App.-Houston [14th Dist.] 1982, pet. ref'd, untimely filed).

In *Teniente,* the defendant complained that the indictment for burglary did not contain the element of culpability required by the Penal Code. 533 S.W.2d at 805. He asserted that the indictment should have contained the element that the entry be "knowingly and intentionally done." *Id.* The application paragraph of the indictment read "did then and there, with intent to commit theft, enter a habitation without the effective consent of [the complainant], the owner." *Id.* at 805–06. The court held that "[t]he indictment alleges the culpable mental state with which the appellant entered the habitation; it alleges he entered the habitation 'with the intent to commit theft.'" *Id.* at 806. The court later explained its holding in *Ex parte Santellana:* "The gist of burglary was held in *Teniente* to be the entry.... Since the alleged intent ... clearly applied to the act constituting the gist of the offense, the indictment[ ][was] held sufficient." 606 S.W.2d 331, 332–333 (Tex.Crim.App.1980).

Here, as in the charge in *Sylvester* and in the indictment in *Teniente,* both the instruction paragraph and the application paragraph included the element of appellant's culpable mental state. In order to find appellant guilty, the jury was required to find that appellant entered the house "with the intent to assault." Accordingly, we hold that the jury was properly in-

structed on the law of burglary, and the application paragraph regarding burglary contained the required culpable mental state and is, therefore, not deficient.

**Elements of Criminal Trespass**

██ Appellant next complains that the trial court, in its charge, did not "provide jurors with the law on criminal trespass such that they could consider [a]ppellant's guilt of the lesser included offense."

An individual commits the offense of criminal trespass if he "enters or remains in a building of another without effective consent" when he "had notice that the entry was forbidden" or "received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05(a) (Vernon 2003).

Here, the trial court did not include a definition of criminal trespass in the first section of the charge, but it did refer to the offense of criminal trespass in the application paragraph. However, this reference did not instruct the jury that in order to find appellant guilty of the offense of criminal trespass it had to find that appellant either had notice that entry was forbidden or had received notice to depart and failed to do so. *See id.* Although the charge is deficient for not including this element of the lesser-included offense, it is not deficient in any way that would prejudice appellant's rights. *See Martin v. State,* 200 S.W.3d 635, 642 (Tex.Crim.App. 2006).

If the jury had convicted appellant of criminal trespass without being required to find all the elements of the offense, appellant could have been egregiously harmed. *See Woods v. State,* 653 S.W.2d 1, 2 (Tex.Crim.App.1982). However, the jury convicted appellant of the greater offense of burglary. The Court of Criminal Appeals has stated that when a jury finds a defendant guilty of a greater offense, any "errors in the charge on the lesser includ-

ed offense, for which the appellant was not convicted, could not so have misled the jury as to constitute fundamental error." *Clark v. State,* 717 S.W.2d 910, 918 (Tex. Crim.App.1986); *see also Saunders v. State,* 913 S.W.2d 564, 570 (Tex.Crim.App. 1995); *Starks v. State,* 127 S.W.3d 127, 133 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd). Once the jury convicted appellant of burglary, having been properly charged on that offense, it had no reason to consider whether appellant might be guilty of the lesser-included offense of criminal trespass. *See Clark,* 717 S.W.2d at 918; *Starks,* 127 S.W.3d at 133.

Moreover, here, the unrefuted evidence conclusively establishes that appellant entered the house of the complainant by breaking in through the kitchen window.

We hold that appellant was not egregiously harmed by the error in the application paragraph of the charge regarding the lesser-included offense of criminal trespass.

### Mistake of Fact Charge

■ Finally, appellant complains that the trial court, in its charge, "improperly required the jury to find that the *only* mistaken fact believed by [a]ppellant at the time of the incident was that he believed that [the complainant] was being held hostage" when "the evidence at trial revealed that [a]ppellant acted under a mistaken belief that an emergency existed."

In its charge, the trial court instructed the jury that it should "find [appellant] not guilty of burglary" if it found that appellant "formed a reasonable belief and did believe that [the complainant] was held hostage by another person and [appellant] believed that his entry was solely for that purpose, or if you have a reasonable doubt thereof. . . . "

Appellant testified generally that he entered the house because he thought "something was wrong." However, his trial counsel then asked him, "When you say something was wrong, what do you mean by something was wrong?" Appellant answered, "I thought somebody was holding them, or I didn't even know."

In light of appellant's testimony that he thought somebody was "holding them" we conclude that the mistake-of-fact portion of the jury charge did not vitally affect a defensive theory of the case. *See Saunders,* 817 S.W.2d at 692; *Martinez,* 190 S.W.3d at 259.

Accordingly, we hold that the record does not show that the jury charge egregiously harmed appellant.

We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.

Justice ALCALA, concurring.

ELSA ALCALA, Justice, concurring.

I write separately to address the burglary charge's omission of the element that requires the State to prove that appellant, John Paul McIntosh, intentionally or knowingly entered the habitation. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). The majority opinion erroneously holds the element of intentional or knowing entry is unnecessary because the jury charge requires intent to commit assault at the time of the entry. I disagree with the majority opinion because (A) Court of Criminal Appeals decisions require proof the entry was intentionally or knowingly done, (B) the majority opinion's omission of the element of intentional or knowing entry in a burglary case now means trespass is no longer a lesser included offense

of burglary, (C) the majority opinion's omission of the element of intentional or knowing entry in a burglary case now risks the conviction of innocent people, (D) decisions pertaining to notice pleadings for indictments are inapplicable to proof requirements required for criminal convictions, and (E) the majority opinion misapplies authority on which it relies.

### A. Court of Criminal Appeals Precedent Requires Culpable Mental State

The majority opinion erroneously relies on a Court of Criminal Appeals decision that is an aberration from prior and later cases rendered by that court. *See Sylvester v. State,* 615 S.W.2d 734, 736 (Tex. Crim.App.1981). In *Sylvester,* the Court of Criminal Appeals upheld a jury charge that did not require intentional or knowing entry because the charge included the element that the defendant entered the building with intent to commit theft. *Id.* According to the court, "the charge required the jury to find the requisite culpable mental state to sustain the conviction." *Id.* Although this decision has not been expressly overruled by the court, it is inconsistent with Court of Criminal Appeals decisions rendered before and after *Sylvester. See DeVaughn v. State,* 749 S.W.2d 62 (Tex.Crim.App.1988); *Day v. State,* 532 S.W.2d 302 (Tex.Crim.App. 1975).

Before *Sylvester,* the Court of Criminal Appeals determined that intentional or knowing entry was a required element of burglary. The court stated, "[W]e hold that to constitute the offense of burglary by committing a felony or theft, the *proof must show* that the entry was either knowingly or intentionally done." *Day,* 532 S.W.2d at 305 n. 1 (emphasis added).

*Sylvester* departed from this precedent, but the Court of Criminal Appeals boomeranged back when it stated, "Although no general culpable mental state is set forth in the [burglary] statute, it is settled that the entry must be intentional or knowing." *DeVaughn,* 749 S.W.2d at 64 n. 3. In describing the ways burglary may be committed, the court listed three types. *Id.* at 64–65. "First, the offense may be committed by *intentionally or knowingly entering a building or habitation* not then open to the public, without the effective consent of the owner *and with the intent* to commit a felony or theft." *Id.* at 64 (emphasis added). "Second, one may commit burglary by *intentionally or knowingly remaining concealed* in a building or habitation, without the effective consent of the owner, *and with the intent* to commit a felony or theft." *Id.* at 64–65 (emphasis added). "Finally, one may commit burglary by *intentionally and knowingly entering a building or habitation,* without the effective consent of the owner, *and committing or attempting* to commit a felony or theft." *Id.* at 65 (emphasis added). As *DeVaughn* makes clear, the type of burglary pleaded in this case requires

- intentional or knowing entry into a building or habitation without the effective consent of the owner, *and*

- entry with the intent to commit a felony or theft.

*Id.*

The *Sylvester* decision is a brief departure from the cases decided before and after it that determine the element of intentional or knowing entry is required to prove burglary. *See Sylvester,* 615 S.W.2d at 736. Because the Court of Criminal Appeals has abandoned the *Sylvester* decision, we are not bound to followed it, and instead should apply the more recent precedent recited in *DeVaughn. DeVaughn,* 749 S.W.2d at 64 n. 3.

### B. Trespass is No Longer a Lesser Included Offense of Burglary

If the majority opinion is correct that intentional or knowing entry is not an element of burglary, then criminal trespass is no longer a lesser included offense of burglary. An offense is a lesser-included offense of another offense "by comparing the elements of the greater offense, as the State pled it in the indictment, with the elements of the statute that defines the lesser offense." *Littrell v. State*, 271 S.W.3d 273, 276 (Tex.Crim.App.2008). An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Aguilar v. State*, 263 S.W.3d 430, 435 (Tex.App.-Houston [1 Dist.] 2008, pet. ref'd). If intentional or knowing entry is required for criminal trespass, but intentional or knowing entry is not required for burglary with intent to commit theft or a felony, then trespass is no longer a lesser included offense of burglary because under this scenario trespass requires an additional element not required by burglary. *See* Tex.Code Crim. Proc. Ann. art. 37.09; *Littrell*, 271 S.W.3d at 276.

By changing the elements of burglary to exclude the intentional or knowing entry, the majority opinion fails to follow Court of Criminal Appeals precedent that states,

"we hold that the offense of criminal trespass is a lesser included offense of all three types of burglary." *Day*, 532 S.W.2d at 306. By omitting the element of intentional or knowing entry from burglary, the majority opinion causes trespass to no longer be a lesser included offense of burglary, in conflict with the precedent of the Court of Criminal Appeals. *See id.; Salazar v. State*, 284 S.W.3d 874, 880 (Ct. Crim.App.2009) (holding trespass lesser included offense of burglary).

**C. Innocent People May Be Convicted**

Under the majority opinion, a defendant can be convicted of burglary if he has no intent to enter the building or habitation. He will be convicted of burglary if he is dragged into the habitation, falls into the habitation, or accidentally goes into the habitation. A criminal conviction for accidental conduct is clearly not permitted by the penal code or by the moral dictates of a civilized society. One of the basic objectives of the penal code is to safeguard conduct that is without guilt from condemnation as a criminal. Tex. Penal Code Ann. § 1.02(4) (Vernon 2003).

The Court of Criminal Appeals has addressed a similar concern in the context of unauthorized use of a motor vehicle. *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App.1989). In *McQueen*, the Court of Criminal Appeals stated,

Since operating another's motor-propelled vehicle is not criminal by its very nature this offense is not a "nature of conduct" type offense. Nor is it a "result" type offense since the statute does not prohibit any specific result of such operation. What makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission. Therefore, unauthorized use of a motor vehicle is a "circum-

stances" type offense, and the culpable mental state of "knowingly" must apply to those surrounding circumstances. *Id.* at 603. The court held the offense of unauthorized use of a motor vehicle "encompasses two 'conduct elements', viz: that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct)." *Id.* at 604.

Here, burglary is like unauthorized use of a motor vehicle in that it is not a "nature of conduct" type offense because entry into a building or habitation is not criminal by its very nature. *See id.* at 603. Similarly, the type of burglary at issue here is not a "result" type offense since the statute does not prohibit any specific result; a person can be guilty of burglary even though no theft or assault actually occurs. *See id.* Burglary is a "circumstances" type offense because it is unlawful due to the surrounding circumstances. *See id.* For a circumstances type offense, "the culpable mental state of 'knowingly' must apply to those surrounding circumstances." *Id.* Like unauthorized use of a motor vehicle, the offense of burglary must encompass the conduct elements that (1) the defendant intentionally or knowingly entered a building or habitation (nature of conduct), and (2) without the effective consent of the owner[1] and with the intent to commit theft or assault (circumstances surrounding conduct). *See id.* at 604.

The element of intent to commit theft or assault could never properly replace the element of intentional or knowing entry because the entry is the element pertaining to the nature of the conduct and the intent to commit theft or assault is the element pertaining to the circumstances surrounding the conduct.

## D. Indictment Requirements Differ From Jury Instructions

The majority opinion erroneously relies on precedent pertaining to notice requirements for indictments: *Teniente v. State,* 533 S.W.2d 805 (Tex.Crim.App.1976) and *Ex Parte Santellana,* 606 S.W.2d 331 (Tex. Crim.App.1980). Notice requirements for indictments are a different matter than proof requirements for convictions. *See Davila v. State,* 547 S.W.2d 606, 609 (Tex. Crim.App.1977) (stating in context of theft, "Although the proof will involve proving up a theft or attempted theft, the elements of the particular theft . . . or attempted theft . . . need not be alleged in the indictment."). Although the *pleadings* need not include all the elements of the theft or a felony when the burglary is charged under the theory that the defendant entered with intent to commit theft or a felony, the *jury instructions* must include all the elements of the theft or felony. *See id.; see also Baldwin v. State,* 538 S.W.2d 109, 111–12 (Tex.Crim.App.1976) (holding "Under the definitions of burglary and theft contained in the V.T.C.A., Penal Code, effective January 1, 1974, supra, *although the proof will*

---

1. Because appellant has not challenged the element concerning whether the defendant must know he did not have the effective consent of the owner to enter the premises, I do not focus on this matter, but make the following observation. To prove criminal intent by the circumstances surrounding the conduct, *McQueen* requires that in an unauthorized use of a motor vehicle case the defendant know that the use was without the effective consent of the owner *See McQueen v. State,* 781

S.W.2d 600, 603 (Tex.Crim.App.1989). In a burglary case, however, criminal intent is shown by the intent to commit theft or assault. Therefore, in a burglary case, unlike in an unauthorized use of a motor vehicle case, it may not be necessary for the State to prove that the defendant knew entry was without the effective consent of the owner because the circumstances surrounding the conduct require proof that the defendant acted with the intent to commit theft or assault.

*involve the necessity of establishing the intent to commit the offense of theft ...* the constituent elements of the particular theft, or intended theft need not be alleged in an indictment or information for burglary with intent to commit theft.") (emphasis added).

### E. Majority Opinion Misapplies Precedent

The majority opinion states,

In order to establish the commission of the offense of burglary of a habitation, the evidence must show "that the entry was either knowingly or intentionally done." *DeVaughn v. State,* 749 S.W.2d 62, 64 n. 3 (Tex.Crim.App.1988). However, this "general culpable mental state is subsumed into the specific intent to commit a felony, theft, or assault." *Id.; Martinez v. State,* 269 S.W.3d 777, 781–82 (Tex.App.-Austin 2008, no pet.).

The reference in *DeVaughn* is to indictments, not jury instructions. *DeVaughn,* 749 S.W.2d at 64 n. 3 (Tex.Crim.App.1988). The footnote to which the majority opinion references states in its entirety,

Although no general culpable mental state is set forth in the statute, it is settled that the entry must be intentional or knowing. V.T.C.A. Penal Code, § 6.02(b), (c); *Baldwin v. State,* 538 S.W.2d 109, 110–12 (Tex.Crim.App. 1976). Because this general culpable mental state is subsumed into the specific intent required in the statute, *an indictment* alleging an offense under § 30.02(a)(1) and (2), supra, is sufficient if it alleges only that the entry was made "with the intent to commit a felony or theft." *Davila v. State,* 547 S.W.2d 606, 608 (Tex.Crim.App.1977).

*Id.* (Emphasis added). As explained in more detail above in section D, notice requirements for indictments are different from proof requirements to convict a person of a crime. Also, as explained in more

detail above in section A, *DeVaughn* plainly lists the proof requirements for burglary, as requiring proof that the entry was intentional or knowing, as well as proof that the defendant had the intent to commit theft or assault. *Id.* at 65. The footnote cited by the majority opinion pertains to notice requirements for indictments and cannot be read to avoid the substance of the text in the body of the opinion.

The majority opinion also cites to a decision by the Austin Court of Appeals. *See Martinez v. State,* 269 S.W.3d 777, 781–82 (Tex.App.-Austin 2008, no pet.). *Martinez* discusses the gravamen of the offense of burglary in conducting a double jeopardy analysis, but it does not address whether an instruction to the jury must include the element of intentional or knowing entry in addition to the intent to commit theft or a felony. *See id.*

### Conclusion

I conclude the jury charge must include the element that the entry be intentional or knowing because

- Court of Criminal Appeals decisions require proof the entry was intentionally or knowingly done;

- the absence of the element of intentional or knowing entry now makes trespass not a lesser included offense of burglary;

- the absence of the element of intentional or knowing entry risks convicting innocent people; and

- the decisions pertaining to notice pleading for indictments are inapplicable to jury charge requirements.

Although this charge was erroneous, appellant was not egregiously harmed by the omission of the element of intentional or knowing entry because he admitted he entered the habitation intentionally. Appellant received a mistake of fact instruction

that allowed the jury to acquit him if it believed his testimony that he entered to save a child who was in danger in the house. *See, e.g., McQueen*, 781 S.W.2d at 601–05 (stating, "The mistake of fact was the defendant's erroneous belief that he had the owner's consent to use the vehicle."). I would hold the charge was erroneous, but not egregiously harmful. I, therefore, concur in the judgment affirming the conviction for burglary.